STORY et al., respondents, *v.* NOWLAN et al., appellants.

BANKRUPTCY—*preference to creditor.* In this case the court found that a firm had committed an act of bankruptcy by giving preference to a creditor.

*Appeal from the Third District, Lewis and Clarke County.*

THE facts appear in the opinion of the court and the dissenting opinion. The decree was rendered by SYMES, J.

CLAGETT & DIXON and E. W. TOOLE, for appellants.

The court erred in sustaining the demurrer to the amended answer, which set out an attachment issued and levied by

respondent, Story, for his debt after the filing of the petition. Such a proceeding on the part of a creditor violates the bankrupt act. § 39 of Act; *In re Princeton*, 1 Bankr. Reg. 178; *In re Coleman*, 2 id. 172. The demurrer admitted the truth of the allegation. The creditor was thereby debarred from proving his debt, and if he could not prove his debt, he could not maintain his petition.

The declarations of Stateler to different persons, concerning the drawing of money out of the bank of appellants by Stateler and others, were improperly admitted. Stateler was the agent of appellants in managing their business. Appellants were bound civilly by Stateler's acts and declarations as to matters within the scope of his authority, and no further. He could not commit an act of bankruptcy for appellants. 1 Greenl. Ev., §§ 113, 114; Story's Agency, §§ 134–136. As to authority of cashier of bank. Id., §§ 114, 115.

A general assignment for all creditors is not an act of bankruptcy. *Langley* v. *Perry*, 2 Bankr. Reg. 180; *Sedgwick* v. *Place*, 1 id. 204; 1 Am. Law Times, 44.

The evidence was insufficient to support the findings as to the preferred payments to Stateler, King, and Weir & Pope. The decree was based on these findings and facts. These payments were made by Stateler in the absence of appellants, and without their knowledge, consent or direction, and were never ratified or confirmed by them. Stateler had no authority to do these acts, and it was no part of his duty as their agent. A principal is never liable for the criminal acts of his agent unless specially authorized. 1 Pars. on Cont. 73; Story's Agency, § 456; *Vanderbilt* v. *Richmond T. Co.*, 2 N. Y. 479; *Clark* v. *Metropolitan Bank*, 3 Duer, 241.

Our bankrupt act in involuntary bankruptcy is in the nature of a penal statute and must be strictly construed. 3 Pars. on Cont. 429; Smith's Stat. Law, §§ 738, 746. All the grounds for involuntary bankruptcy involve fraud. § 39. Mere insolvency is not of itself ground for involuntary bankruptcy. *Dorn* v. *Compton*, 2 Bankr. Reg. 182.

The intent of the debtor determines the question of fraud within the meaning of the bankrupt act. An act is not

fraudulent unless it was meant to be so. *Langley* v. *Perry,* 2 Bankr. Reg. 180; Bump on Bankr. 128–132; James on Bankr. 153, 166–167.

The acts of Stateler were quasi criminal so far as they might be acts of bankruptcy. Appellants never authorized such acts and knew nothing of their commission and could not intend to give a preference, and hence could not commit an act of bankruptcy.

The evidence shows that respondent, Story, consented to the assignment, and the court erred in not finding this fact. He is thereby estopped from proceeding in bankruptcy, or denying the legality of the assignment. *In re Sunderland,* Law Times, 73; *In re Schuyler,* 2 Bankr. Reg. 169; *In re Whitmore,* Law Times, 105; *Ex parte Stray,* 1 Bankr. Reg. 18.

W. F. SANDERS and CHUMASERO & CHADWICK, for respondents.

The demurrer was properly overruled. *In re Schuyler,* 2 Bankr. Reg. 169.

The acts of respondent, Story, do not estop him from proceeding in this case. He endeavored to get the property of appellants into good hands, whence it would be forthcoming for distribution to pay creditors.

Stateler was a general agent about a particular business. His declarations, while properly engaged as agent, are admissible as part of the *res gestæ.*

Bankruptcy in modern days is not regarded as involving the turpitude it formerly did. The bankrupt law is no more penal or criminal than an attachment law, under which property is taken without the debtor's consent. Bankruptcy is a private tort. 1 *Bish. Crim. Law,* §§ 392, 405. Making preferred payments under the bankrupt act is not declared a crime or punished. 1 Lead. Crim. Cas. 241. The question as to Stateler binding his employers criminally does not arise in this case.

The payments were made to Weir & Pope, and King and Stateler by the express authority of appellants, or while

Stateler was acting in his principal's business. Appellants are liable therefor in either case. 1 Whart. Crim. Law, 154; 1 Bish. Crim. Law, 439, 440; *Rex* v. *Gutch*, Moody & M. 433; *Commonwealth* v. *Nichols*, 10 Metc. 259.

Stateler required no authority to pay depositors in the bank of his employers. 1 Am. Lead. Cas. 569. If an agent is instructed not to do certain acts within the scope of his general authority, but does the acts, the principals are bound thereby. *Dispatch L. Packets* v. *Bellamy M. Co.*, 12 N. H. 206, 223. The principal is held to the duty of employing agents that will obey instructions. Appellants never disavowed the acts of Stateler in making the preferred payments. They made no effort to get back the money that their agent paid to preferred creditors.

WARREN, C. J. The giving of preference to their creditor Stateler, to the amount of $30,000, is one of the acts of bankruptcy found by the judge of the district court. This was the fact sought to be established by the evidence preserved in the record, and, in determining it, all the evidence concerning it should be considered together, and, so considering it, I am compelled to the conclusion that the finding of the judge in this particular is supported by the evidence. It is unnecessary to review the other findings. The findings and adjudication of the judge of the district court are affirmed.

*Judgment affirmed.*

KNOWLES, J., dissenting. This proceeding is brought to this court on a petition for a review of the adjudication by the Hon. G. G. SYMES, Associate Justice of this court, made while holding the district court for the third judicial district, declaring Nowlan and Weary bankrupts.

The petition of Story and Bradway, filed herein, makes various allegations of acts of bankruptcy committed by Nowlan and Weary. The answer of Nowlan and Weary puts in issue these allegations. It confesses an assignment of all their property to one Thompson, and from him to

one Corbin, for the benefit of all their creditors, and avers that the same was done with the consent of petitioners, while it denies that the same was done with the intent to hinder, delay or defraud their creditors or to defeat the operation of the bankrupt act. To constitute this general assignment an act of bankruptcy, it must have been done with one of these intents. In support of this, see the reported decision of Justice SWAYNE, in *Langly* v. *Perry*, 2 Bankr. Reg. 180, and *Thos. Farrin* v. *John Crawford et al.*, id. 181. These intents are facts to be established by the evidence, and cannot be inferred from the mere fact of such an asssignment. I am well aware that there is a decision adverse to this view, namely, *Langly* v. *Perry*, 1 Bankr. Reg. 155, but this decision is evidently the very one which Justice SWAYNE reversed in the same entitled case above referred to. This issue cannot be treated then as though it was admitted, and made the foundation for the above adjudication. When a court below finds that a defendant has committed certain specific acts of bankruptcy, upon which it evidently based its adjudication, and which, if correctly found, were sufficient to warrant the adjudication, it will not be presumed by this court that it found other acts than those specified, although there were issues presented in the pleadings upon such other acts. Only those acts then are to be considered that are specified in the findings of the court. If the evidence did not warrant the court in finding that Nowlan and Weary had committed these acts, the judgment of the court below must be reversed.

The first finding of the judge was to the effect that Nowlan and Weary had committed an act of bankruptcy in paying to their clerk, Stateler, something near $30,000, with the intent to give him a preference. The evidence shows that Nowlan and Weary were indebted to Stateler in about this amount; that he was the cashier, book-keeper and teller of their bank at Helena; that at the time of this payment neither Nowlan or Weary were present, Weary being at Virginia city, and Nowlan at the Cable mine; the former one hundred and twenty miles distant, the latter some

eighty miles. The only evidence offered to prove that either of these partners had directly authorized this payment was the testimony of one Dunovan. He testified that he was present when Stateler paid himself out of the funds in the bank, and that at that time Stateler told him that he had an understanding or agreement with Nowlan and Weary, that in case of a crash he should draw out sufficient to pay what they owed him. Counsel for defendants objected to this testimony of Dunovan, which objection was overruled, and to this ruling defendants' counsel duly excepted. It is contended by counsel for petitioners that this declaration of Stateler was part of the *res gestæ* of Stateler taking this money in payment of himself. The *res gestæ* of a transaction is something that was said or occurred at the time a transaction was being conducted, and may be introduced in evidence, when the same is the subject of controversy, to explain or throw light upon it, but the *res gestæ* of one transaction cannot be introduced for the purpose of explaining or throwing light upon another. As to another transaction, it is hearsay, unless the parties to be affected by the same were present and acquiesced therein. This evidence could not be introduced as part of the *res gestæ* of any agreement between Stateler and Nowlan and Weary to explain or throw light upon the same. In considering whether or not Stateler was authorized by Nowlan and Weary to make this payment to himself, the point to be considered is, whether or not there was the agreement named by Dunovan. For the purpose of establishing or explaining any such agreement, the declarations of Stateler, so far as they affected Nowlan and Weary, were clearly incompetent. What other evidence was there presented to the judge to warrant him in finding that Nowlan and Weary had ever made such an agreement with Stateler? None, save that Stateler was retained in the employ of Nowlan and Weary, after the time the judge found them insolvent, when he had it in his power to make himself a preferred creditor. Such evidence is not sufficient to warrant the finding of such an agreement, although it may

be a strong ground of suspicion that such was the case. A judge, however, cannot act upon suspicions. For these reasons I do not think the court below was warranted in finding any such agreement. The other point involved in the discussion of this finding is, as to whether the authority given to Stateler, as cashier, book-keeper and teller of the bank of Nowlan and Weary, was sufficient to authorize him to make a payment to himself, with the intent to give himself a preference. This point is involved in the determination of the other two findings of the judge, before whom the cause was heard, and will be discussed in connection with them.

The second finding was, that Nowlan and Weary had made a payment to one King, with the intent to give him a preference; and the third, that they had made a payment to Messrs. Wier & Pope, with the intent of giving them a preference.

The evidence shows that Stateler went to King, and also to Wier & Pope, and told them that there was about to be trouble at the bank and that they had better come and draw out what money they had therein, which they accordingly did. Undoubtedly if Nowlan and Weary are bound by these acts of Stateler, the court was warranted in adjudicating them bankrupts, for it is evident Stateler intended to give these persons a preference. It is not contended that Nowlan and Weary ever gave Stateler any direct authority to perform these acts, or ever ratified them afterward. It does not appear that up to the time of this trial Nowlan and Weary had any knowledge of the manner in which these payments were made. Neither of them were at Helena at the time the same were made. This brings us to the consideration of the authority possessed by Stateler, as bookkeeper, cashier and teller of appellants' bank. In general, it may be said, that the law presumes that an agent has all the authority necessary for conducting the business intrusted to him, and unless some notice is given to the person dealing with such agent of a limitation in this authority, the principal will be estopped from denying it in any contest be-

tween him and such person, where the latter will be sub-
jected to any loss if the former was permitted to deny this
authority.  Was the business intrusted to Stateler of such
a nature as to authorize him to commit the acts of bank-
ruptcy specified in the findings of the court?  Stateler had
authority undoubtedly to pay all checks that were pre-
sented to that bank in the due course of business.  Such
payments as these, however, do not constitute acts of bank-
ruptcy.  If so, then the payment of any check by a bank,
or any sum by any person, being at the time insolvent,
would be an act of bankruptcy.  Payments to constitute
acts of bankruptcy must be made with the intent of giving
a preference, or in other words, the payments must be such
as amount to an attempt by the person making them to
parcel out his effects among certain of his creditors, leaving
the debts of the balance unprovided for.  They are pay-
ments made for the purpose of defeating one of the princi-
pal objects of the bankrupt act, namely, the general distri-
bution of the assets of a bankrupt among all his creditors.
Now, such payments as these are not within the usual scope
of the business of a banking-house.  Such payments are
prohibited by law since the passage of the bankrupt act,
and it will not be implied that an agent has the authority to
violate the provisions of law.  It was not then within the
scope of the business of Stateler to make payments with the
intent to give a preference to the parties named.  Hilliard
on Bankruptcy lays down this rule:  One cannot commit an
act of bankruptcy by the conduct of his agent unknown
to him.  See Hill. on Bankr. 24.  In looking over the
list of acts that constitute a man a bankrupt, it will be
readily seen that it would be impossible to bind a principal
by such acts of his agent without specific authority.  It
will be observed that many of the acts which make a man
liable to be adjudged a bankrupt involve some wrong in-
tent.  To make a principal liable for the intent with which
his agent may do any act, it appears to me would be hold-
ing him to too strict a liability.  In general, I should say,
that a court in bankruptcy could only inquire as to the in-

tent of the principal in authorizing his agent to perform the act complained of, and that the intent of the agent could in no way be considered. It may be observed upon this point, that the same rule should not prevail in bankruptcy as where a principal contracts through an agent. In the latter case the principal is bound by the apparent authority of his agent. In the former he should be bound only by the actual authority given his agent. The reason for the rules in estoppel should not apply in bankruptcy upon this subject.

It does not appear that Story actually obtained any preference by means of his attachment process. From the answer of defendants I understand the law to be that a party is prohibited only from proving his debt when he has actually obtained a fraudulent preference. It may also be doubted whether the defendants could raise this point, for if Story and Bradway actually have obtained a fraudulent preference, Nowlan and Weary must have suffered it, and hence do not possess clean hands themselves, and courts of equity will not allow parties to set up as a defense a fraud which they have participated in. The denial of the right to prove a claim by a person who has obtained a fraudulent preference is a matter that the other creditors can take advantage of after the adjudication of bankruptcy.

The court below did not find upon the issue as to whether Story and Bradway had consented to the assignment of Nowlan and Weary to Thompson, and from Thompson to Corbin, nor upon the issue as to whether this assignment was made with the intent of defeating the operation of the bankrupt act. This court will not determine these issues.